**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. _____

ACE AMERICAN INSURANCE COMPANY,

        Plaintiff,

v.

DISH NETWORK, LLC,

        Defendant.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

Plaintiff ACE American Insurance Company ("ACE", as further described herein) for Complaint against Defendant Dish Network, LLC ("Dish", as further described herein) alleges as follows:

**NATURE OF ACTION**

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. ACE seeks a determination that it has no obligation to reimburse defense costs to Dish under insurance policies issued by ACE to EchoStar Communications Corporation and Dish Network Corporation (collectively "ACE Policies") with respect to the Underlying Lawsuit identified in this Complaint, including the claims for alleged violations of the Telemarketing Act, 15 U.S.C. § 6101, et seq.; the Foreign Trade Commission Act, 15 U.S.C. § 45, et seq. ("FTC Act"); the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"); the California Business & Professions Code Section 17200, et seq.; the Illinois

Consumer Fraud Act, 815 ILCS 505/1 et seq. and 815 ILCS 305/1, et seq.; the North Carolina Telephone Solicitations Act, N.C. Gen. Stat. § 75-100, et seq.; and the Ohio Consumer Sales Practice Act, Ohio Revised Code 1345.01 et seq.

## PARTIES

2. Plaintiff ACE American Insurance Company ("ACE") is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

3. Defendant Dish Network, LLC ("Dish") is a Colorado limited liability company with its principal place of business in Englewood, Colorado. Dish is the named defendant in the Underlying Lawsuit identified in this Complaint, and alleges that it is an insured under the ACE Policies.

## JURISDICTION AND VENUE

4. This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

5. An actual justiciable controversy exists between ACE and Dish within the meaning of 28 U.S.C. § 2201 regarding whether ACE has an obligation to reimburse defense costs to Dish under the ACE Policies.

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of any deductible obligations, interest and costs, and the suit is between citizens of different states.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, and Dish resides in this judicial district for venue purposes.

8.     Pursuant to Fed.R.Civ.P. 19(c), ACE hereby informs the Court that the plaintiffs in the Underlying Lawsuit, the United States of America and the States of California, Illinois, North Carolina and Ohio ("Underlying Plaintiffs"), may be "Persons Required to be Joined if Feasible" under Rule 19(a) as may be interpreted by the Colorado federal court. ACE has not joined the Underlying Plaintiffs in this action because, as governmental entity defendants, the Court may not have subject matter jurisdiction to adjudicate claims against them. ACE further avers that even if the Underlying Plaintiffs are necessary parties under Rule 19(a) whose joinder is not feasible, the Court should determine that in equity and good conscience this action should proceed among the existing parties pursuant to Rule 19(b).

## UNDERLYING LAWSUIT

9.     This action addresses insurance coverage for an enforcement action lawsuit brought against Dish by The United States of America and the States of California, Illinois, North Carolina and Ohio, alleging violations of the Telemarketing Act, 15 U.S.C. § 6101, et seq.; the Foreign Trade Commission Act, 15 U.S.C. § 45, et seq. ("FTC Act"); the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"); the California Business & Professions Code Section 17200, et seq.; the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. and 815 ILCS 305/1, et seq.; the North Carolina Telephone Solicitations Act, N.C. Gen. Stat. § 75-100, et seq.; and the Ohio Consumer Sales Practice Act, Ohio Revised Code 1345.01 et seq. ("Underlying Lawsuit").

10. ACE is currently monitoring the satisfaction of deductible obligations under the ACE Policies and other insurance policies by defense costs incurred in defending Dish against the Underlying Lawsuit under a full and complete reservation of rights, including the right to reimbursement of any defense costs that may be paid should it be determined that ACE had and has no obligation to reimburse defense costs to Dish.

11. The First Amended Complaint in the Underlying Lawsuit ("Complaint") was filed on April 30, 2009 in the United States District Court for the Central District of Illinois, Springfield Division, and is styled United States of America and the States of California, Illinois, North Carolina and Ohio v. Dish Network, LLC, Case No. 3:09-cv-03073. A true and correct copy of the First Amended Complaint in the Underlying Lawsuit is attached as Exhibit A to this complaint.

12. The Complaint in the Underlying Lawsuit alleges that since on or about October 1, 2003, Dish, directly or through one or more dealers acting on its behalf, initiated outbound telemarketing telephone calls to residents of the states of California, Illinois, North Carolina, Ohio, and other states.

13. The Complaint in the Underlying Lawsuit further alleges that Dish's telephone calls were placed to telephone numbers listed on the National Do Not Call Registry; that Dish made pre-recorded outbound telemarketing calls to recipients; and that Dish abandoned outbound telemarketing calls by failing to connect the call to a representative within two (2) seconds of the consumer's completed greeting. The Complaint alleges that Dish's conduct violated federal and state statutes as described above.

## THE INSURANCE CONTRACTS

14. During the time period October 1, 2003 to April 30, 2009, ACE issued four General Liability policies to EchoStar Communications Corporation ("EchoStar"), from August 1, 2004 to August 1, 2008, and one General Liability policy to Dish Network Corporation ("Dish Corp."), from August 1, 2008 to August 1, 2009 (collectively, the "ACE Policies"). Dish alleges that it is an insured under each of the ACE Policies. The five policies are set forth below:

    a.    Policy No. HDO G21702055, issued to EchoStar for the period August 1, 2004 through August 1, 2005 ("2004 Policy"). A true and correct copy of the 2004 Policy is attached as Exhibit B to this complaint and is incorporated herein by reference.

    b.    Policy No. HDO G21708823, issued to EchoStar for the period August 1, 2005 through August 1, 2006 ("2005 Policy"). A true and correct copy of the 2005 Policy is attached as Exhibit C to this complaint and is incorporated herein by reference.

    c.    Policy No. HDO G20592874R, issued to EchoStar for the period August 1, 2006 through August 1, 2007 ("2006 Policy"). A true and correct copy of the 2006 Policy is attached as Exhibit D to this complaint and is incorporated herein by reference.

    d.    Policy No. HDO G21745327, issued to EchoStar for the period August 1, 2007 through August 1, 2008 ("2007 Policy"). A true and correct copy of the 2007 Policy is attached as Exhibit E to this complaint and is incorporated herein by reference.

    e.    Policy No. HDO G2372537A, issued to Dish Corp. for the period August 1, 2008 through August 1, 2009 ("2008 Policy"). A true and correct copy of the 2008 Policy is attached as Exhibit F to this complaint and is incorporated herein by reference.

15. The ACE Policies each contain a Deductible Endorsement (ALAE Included in Deductible), form LD 6U72b, which provides for a $500,000 deductible which applies to "[t]he sum of all damages and 'allocated loss adjustment expense' under Coverage A and medical expense under Coverage C arising out of any one 'occurrence';" and "[t]he sum of all damages and 'allocated loss adjustment expense' under Coverage B sustained by any one person or organization." The Deductible Endorsement further provides:

> \*\*\*
> 5. You agree with us that we shall not have any duty to defend any such "suit", nor to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit".

16. As specified in the ACE Policies, and as set out in more detail below, the coverage provided is limited, and is subject to certain definitions, conditions, scope and date restrictions, insuring agreements, retained and aggregate policy limits, and exclusions.

17. General Liability Coverage in the ACE Policies is written on forms CG 00 01 10 01, CG 00 01 12 04, and CG 00 01 12 07. The forms contain the same relevant coverage grant provisions.

18. Coverage A, "Bodily Injury and Property Damage Liability" ("Coverage A"), provides:

> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>
>    \*\*\*
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused " by an "occurrence" that takes place in the "coverage territory";

  (2) The "bodily injury" or "property damage" occurs during the policy period;

  \*\*\*

19. The ACE Policies contain the following definitions relevant to Coverage A:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes sickness, disease, death, mental anguish, shock and disability.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

20. The ACE policies contain the following exclusion relevant to Coverage A:

This insurance does not apply to:

  **a.** **Expected or Intended Injury**

  "Bodily Injury" or "property damage" expected or intended from the standpoint of the insured.

  \*\*\*

21. Coverage B, "Personal and Advertising Injury Liability" ("Coverage B"), provides:

  1. Insuring Agreement.

7

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.

\*\*\*

      b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

22. The ACE policies contain the following definitions relevant to Coverage B:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

      a.      False arrest, detention or imprisonment;

      b.      Malicious prosecution;

      c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

      d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      e.      Oral or written publication of material that violates a person's right of privacy;

      f.      The use of another's advertising idea in your "advertisement"; or

      g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

23. The ACE policies contain the following exclusions relevant to Coverage B:

    **a.**    **Knowing Violation of Rights of Another**

            "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\*\*\*\*

    **c.**    **Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

\*\*\*\*

    **j.**    **Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

    (1)    Advertising, broadcasting, publishing or telecasting;

\*\*\*

24. The ACE Policies also contain Endorsement form CG 21 16 07 98, "Exclusion — Designated Professional Services", which provides in pertinent part as follows:

### **SCHEDULE**

### **Description of Professional Services:**

1. Broadcasting services

\*\*\*

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering or failure to render any professional service.

25. The 2006 Policy and 2007 Policy also contain Endorsement form CG 00 67 03 05, "Exclusion — Violation of Statutes that Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information", which provides as follows:

9

A.  The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability:**

**2.  Exclusions**.

This Insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.**  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.**  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.**  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B**.  The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability**:

**2.  Exclusions**.

This Insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.**  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.**  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.**  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

26. The 2008 Policy also contains the following exclusion relevant to Coverage A:

This insurance does not apply to:

**q.  Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)**  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)**  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM ACT of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

27. The 2008 Policy also contains the following exclusion relevant to Coverage B:

This insurance does not apply to:

**p.  Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)**  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)**  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM ACT of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COUNT 1

## DECLARATORY JUDGMENT

28. ACE hereby incorporates and re-alleges the allegations in paragraphs 1-27 as if fully set forth herein.

29. There exists a genuine and bona fide dispute, and an actual controversy and disagreement, between ACE and Dish with regard to whether ACE has an obligation under the ACE Policies to reimburse defense costs incurred in defending Dish against the Underlying Lawsuit.

30. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, ACE in good faith requests that the Court declare the following:

    a.    That ACE has no obligation under the ACE Policies' Coverage A to reimburse defense costs incurred in defending Dish because there is no alleged "property damage" and no alleged "bodily injury".

    b.    That ACE has no obligation under the ACE Policies' Coverage A to reimburse defense costs incurred in defending Dish because there is no alleged "occurrence".

    c.    That ACE has no obligation under the ACE Policies' Coverage A to reimburse defense costs incurred in defending Dish because coverage is excluded by the "expected or intended" exclusion.

    d.    That ACE has no obligation under the ACE Policies' Coverage B to reimburse defense costs incurred in defending Dish because there is no alleged "personal and advertising injury."

e.  That ACE has no obligation under the ACE Policies' Coverage B to reimburse defense costs incurred in defending Dish, to the extent that the conduct alleged in the Underlying Lawsuits did not arise out of Dish's business.

f.  That ACE has no obligation under the ACE Policies' Coverage B to reimburse defense costs incurred in defending Dish because coverage is excluded by the "knowing violation of rights of another" exclusion.

g.  That ACE has no obligation under the ACE Policies' Coverage B to reimburse defense costs incurred in defending Dish because coverage is excluded by the "material published prior to policy period" exclusion.

h.  That ACE has no obligation under the ACE Policies' Coverage B to reimburse defense costs incurred in defending Dish because coverage is excluded by the "insureds in media and internet type businesses" exclusion.

i.  That ACE has no obligation under the ACE Policies' Coverage A or Coverage B to reimburse defense costs incurred in defending Dish because coverage is excluded by the "Designated Professional Services" exclusion.

j.  That ACE has no obligation under the ACE Policies' Coverage A or Coverage B of the 2006 Policy or 2007 Policy to reimburse defense costs incurred in defending Dish because coverage is excluded by the "violation of statutes that govern e-mails, fax, phone calls or other methods of sending material or information" exclusion.

    k.    That ACE has no obligation under the ACE Policies' Coverage A or Coverage B of the 2008 Policy to reimburse defense costs incurred in defending Dish because coverage is excluded by the "distribution in violation of statutes" exclusions.

    l.    That ACE has no obligation under the ACE Policies' Coverage A or Coverage B to reimburse defense costs incurred in defending Dish to the extent that an "occurrence" under Coverage A or a "personal and advertising injury" offense under Coverage B did not take place during the policy period.

    m.    That ACE has no obligation under the ACE Policies' Coverage A or Coverage B to reimburse defense costs incurred in defending Dish because there are no damages alleged in the Underlying Lawsuit to which this insurance applies.

    n.    That ACE has no obligation under the ACE Policies' Coverage A or Coverage B to reimburse defense costs incurred in defending Dish because the relief sought in the Underlying Lawsuit are penalties to which this insurance does not apply.

    o.    That ACE has no obligation under the ACE Policies' Coverage A or Coverage B to reimburse defense costs incurred in defending Dish because the relief sought in the Underlying Lawsuit are punitive damages to which this insurance does not apply.

    p.    That ACE has no obligation to reimburse defense costs incurred in defending Dish if it is determined that Dish is not an insured under the ACE Policies.

    q.    That ACE has no duty to defend Dish under any other provision in the ACE Policies.

r.  If the Court rules that ACE has no obligation under the ACE Policies to reimburse defense costs incurred in defending Dish for any, all or some claims against Dish in the Underlying Lawsuit, that ACE is entitled to reimbursement of any and all defense costs that may have reimbursed to Dish for defense of any or all such claims in the Underlying Lawsuit.

s.  If the Court finds that ACE has any obligation under the ACE Policies to reimburse defense costs incurred in defending Dish, that any such obligation applies only to claims in the Underlying Lawsuit for which there is a potential for coverage under each of the ACE Policies.

t.  If the Court finds that ACE has any obligation under the ACE Policies to reimburse defense costs incurred in defending Dish, that the obligation to reimburse defense costs incurred in defending Dish does not commence until Dish has satisfied its $500,000.00 deductible obligation as to each plaintiff "person or organization" in the Underlying Lawsuit under each of the 2004 Policy and 2005 Policy by payment of reasonable and necessary defense costs.

u.  If the Court finds that ACE has any obligation under the ACE Policies to reimburse defense costs incurred in defending Dish, that the obligation to reimburse defense costs incurred in defending Dish does not commence until Dish has satisfied its $500,000.00 deductible obligation under the commercial general liability policy number TC2J-GLSA-419J7603-TIL-03 effective from August 1, 2003 to August 1, 2004 issued by Travelers Indemnity Company of Illinois to

   EchoStar Communications Corp., by payment of reasonable and necessary defense costs.

v.   If the Court finds that ACE has any obligation under the ACE Policies to reimburse defense costs incurred in defending Dish, that ACE's obligations are reduced by the obligations of any other insurer that also provides coverage for Dish for the Underlying Lawsuit.

w.   If the Court finds that ACE has any obligation under the ACE Policies to reimburse defense costs incurred in defending Dish, that ACE is only obligated to reimburse reasonable and necessary defense costs incurred by Dish.

## **PRAYER FOR RELIEF**

WHEREFORE, ACE prays as follows:

(1)   For a declaration that it has no obligation under the ACE Policies to reimburse defense costs incurred in defending Dish with respect to the Underlying Lawsuit, including the claims for alleged violations of the Telemarketing Act, 15 U.S.C. § 6101, et seq.; the FTC Act, 15 U.S.C. § 45, et seq.; the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"); the California Business & Professions Code Section 17200, et seq.; the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. and 815 ILCS 305/1, et seq.; the North Carolina Telephone Solicitations Act, N.C. Gen. Stat. § 75-100, et seq.; and the Ohio Consumer Sales Practice Act, Ohio Revised Code 1345.01 et seq.; and

(2)   For such other and further relief this Court may deem just and proper.

## **DEMAND FOR JURY**

ACE requests that this matter by tried to a jury of twelve (12) persons.

DATED:     March 4, 2013

                        COZEN O'CONNOR

By: *s/Christopher S. Clemenson*
Christopher Clemenson
COZEN O'CONNOR
707 – 17th Street, Ste. 3100
Denver, CO 80202
Telephone: (720) 479-3900
E-mail:     cclemenson@cozen.com

Doug Tuffley
COZEN O'CONNOR
1201 Third Avenue, Suite 5200
Seattle, WA  98101-3071
Telephone:  206-340-1000
E-mail:   dtuffley@cozen.com
*Attorneys for Plaintiff ACE American Insurance Company*