IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00560-REB-MEH

ACE AMERICAN INSURANCE COMPANY,

      Plaintiff,

v.

DISH NETWORK, LLC,

      Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendant's Motion to Dismiss this Action [filed June 21, 2013; docket #22]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #23]. The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, this Court respectfully RECOMMENDS that Defendant's motion be **GRANTED IN PART AND DENIED IN PART**.[1]

_____

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

## BACKGROUND

Plaintiff initiated this lawsuit on March 4, 2013, then filed the operative Amended Complaint as a matter of course on May 3, 2013.  (Dockets ##1, 12.)

## I.    Allegations of Fact

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff ACE American Insurance Co. ("ACE") in its Amended Complaint that may be pertinent to the issues raised in the present motion.

From August 1, 2004 to August 1, 2008, ACE issued four General Liability policies to EchoStar Communications Corporation ("EchoStar").  From August 1, 2008 to August 1, 2011, ACE issued three General Liability policies to Dish Network Corporation ("Dish").  From August 1, 2011 to August 1, 2013, ACE issued two Excess Commercial General Liability Policies to Dish. These policies are referred to collectively as the "ACE Policies."  Dish alleges that it is an insured under each of the ACE Policies. The ACE Policies are more specifically identified below:

1. Policy No. HDO G21702055, issued to EchoStar for the period August 1, 2004 to August 1, 2005 ("2004 Policy").

2. Policy No. HDO G21708823, issued to EchoStar for the period August 1, 2005 to August 1, 2006 ("2005 Policy").

3. Policy No. HDO G20592874R, issued to EchoStar for the period August 1, 2006 to August 1, 2007 ("2006 Policy").

4. Policy No. HDO G21745327R, issued to EchoStar for the period August 1, 2007 to August 1, 2008 ("2007 Policy").

5. Policy No. HDO G2372537A, issued to Dish for the period August 1, 2008 to August 1, 2009 ("2008 Policy").

6. Policy No. HDO G24933829, issued to Dish for the period August 1, 2009 to August 1, 2010 ("2009 Policy").

7. Policy No. HDO G25520002, issued to Dish for the period August 1, 2010 to August 1, 2011 ("2010 Policy").

8. Policy No. XSL G25531309, issued to Dish for the period August 1, 2011 to August 1, 2012 ("2011 Policy").

9. Policy No. XSL G27011007, issued to Dish Corp. for the period of August 1, 2012 to August 1, 2013 ("2012 Policy").

As specified in the ACE Policies, the coverage provided is limited, and is subject to certain definitions, conditions, scope and date restrictions, insuring agreements, retained and aggregate policy limits, and exclusions. General Liability Coverage in the ACE Policies is written on forms CG 00 01 10 01, CG 00 01 12 04, and CG 00 01 12 07. The forms contain the same relevant coverage grant provisions. Coverage A, "Bodily Injury and Property Damage Liability" ("Coverage A"), of the 2004 Policy, 2005 Policy, 2006 Policy, 2007 Policy, 2008 Policy, 2009 Policy and 2010 Policy (collectively the "General Liability Policies") provides:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

***

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

***

Coverage B, "Personal and Advertising Injury Liability" ("Coverage B"), of the General

3

Liability Policies provides:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

***

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The 2004 Policy, 2005 Policy, 2006 Policy, 2007 Policy, and 2008 Policy each contain a Deductible Endorsement (allocated loss adjustment expense ("ALAE") Included in Deductible), (2004 Policy form LD6U72b; 2005-2008 Policies form CC1E15), which provides for a $500,000 Deductible Per Occurrence amount which applies to "[t]he sum of all damages and 'allocated loss adjustment expense' under Coverage A and medical expense under Coverage C arising out of any one 'occurrence';" and "[t]he sum of all damages and 'allocated loss adjustment expense' under Coverage B sustained by any one person or organization."  The Deductible Endorsement further provides:

***

5. You agree with us that we shall not have any duty to defend any such "suit", nor to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit".

6. You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence.

***

4

"Deductible Per Occurrence" shall mean the amount of damages and "allocated loss adjustment expense" under this policy which you have a duty to pay and which arises from (i) any one "occurrence" to which insurance applies under this policy or (ii) "personal injury" or "advertising injury" (or "personal and advertising injury" if so defined in your policy) sustained by any one person or organization.

"Allocated Loss Adjustment Expense" shall mean any expenses, cost, and interest provided for under Section 1 – Coverage, Supplementary Payments – coverages A and B of this policy, or any other expenses, costs, or interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or "suit" arising under this policy, which the Claim Service Organization shown in the Schedule, under its accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees, expenses, fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical and containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records: and the cost of obtaining depositions and court reports or recorded statements. "Allocated loss adjustment expense" shall not include the salaries of our employees, adjuster's fees, the Claim Service Organization employees or any potential Claim Service Organization employees.

The ACE Policies contain the following definitions relevant to Coverage B: "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

5

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

The ACE Policies also contain the following exclusions relevant to Coverage B:

a. Knowing Violation of Rights of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

****

c. Material Published Prior to Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

****

j. Insureds in Media and Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

***

The ACE Policies contain Endorsement form CG 21 16 07 98 and form XS-21172, "Exclusion – Designated Professional Services", which provides in pertinent part as follows:

<u>SCHEDULE</u>

Description of Professional Services:

1. Broadcasting services

***

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily

6

Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal and Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering or failure to render any professional service.

Dish seeks insurance coverage from ACE for the defense of two lawsuits: (1) an enforcement action lawsuit brought against Dish by the United States of America and the States of California, Illinois, North Carolina and Ohio, alleging violations of federal and state statutes and regulations, including the Telemarketing Act, 15 U.S.C. § 6101, et seq.; the Federal Trade Commission Act, 15 U.S.C. § 45, et seq. ("FTC Act"); the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"); the Telephone Sales Rules, as amended, 16 C.F.R. Part 310, et seq. ("TSR"); the Federal Communications Commission ("FCC") Do Not Call Rule, 47 C.F.R. § 64, et seq.; the California Business & Professions Code Section 17200, et seq.; and California Civil Code Section 1770, et seq.; the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. and 815 ILCS 305/1, et seq.; the North Carolina Telephone Solicitations Act, N.C. Gen. Stat. § 75-100, et seq.; and the Ohio Consumer Sales Practice Act, Ohio Revised Code 1345.01 et seq. ("USA Lawsuit"); and (2) an action brought against Dish by Matthew Donaca alleging violations of the TCPA and FCC Regulations ("Donaca Lawsuit") (collectively, the "Underlying Lawsuits").

The USA Lawsuit alleges that since on or about October 1, 2003, Dish, directly or through one or more dealers acting on its behalf, initiated outbound telemarketing telephone calls to residents of the states of California, Illinois, North Carolina, Ohio, and other states. The USA Lawsuit further alleges that Dish's telephone calls were placed to telephone numbers listed on the National Do Not Call Registry; that Dish made pre-recorded outbound telemarketing calls to recipients; and that Dish abandoned outbound telemarketing calls by failing to connect the call to a representative within two

7

(2) seconds of the consumer's completed greeting.  The USA Lawsuit alleges that Dish's conduct violates federal and state statutes as described above. On February 4, 2011, the court in the USA Lawsuit stayed all proceedings except fact discovery on TCPA-related claims ("Stay Order"). Fact discovery was closed in the USA Lawsuit on June 30, 2012, and continued by court orders on discrete issues until September 28, 2012.

A Second Amended Complaint and Demand for Jury Trial in the USA Lawsuit ("USA Second Amended Complaint") was filed on March 12, 2013, and by court order is deemed effective May 18, 2012.  The USA Second Amended Complaint asserts a new Count by plaintiff United States against Dish for allegedly placing outbound telemarketing calls to individuals listed on Dish's internal do not call list in violation of the Telemarketing Sale Rules, as amended, 16 C.F.R Part 310 ("TSR"), and restates the Counts contained in the First Amended Complaint.

A Complaint and Jury Demand in the Donaca Lawsuit was filed on November 8, 2011 in the United States District Court for the District of Colorado and is styled *Matthew Donaca v. Dish Network, LLC*, Civil Action No. 11-cv-2910-RBJ-KLM.  Donaca filed a First Amended Complaint and Jury Demand on February 3, 2012.  Donaca alleges that since on or about January 13, 2006, Dish, either directly or through one or more of its authorized retailers acting on its behalf, initiated unsolicited, live and/or automated outbound telemarketing calls to Mr. Donaca, a California resident, and to a potential class of individuals nationwide, whose telephone numbers were on the National Do Not Call Registry, in violation of the TCPA and FCC regulations, and seeks statutory damages under the TCPA and injunctive relief.

## II.     Procedural History

Based upon these factual allegations, ACE seeks declaratory judgments pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, essentially declaring that ACE has no duty to defend or indemnify Dish with respect to the Underlying Lawsuits. (Amended Complaint, docket #12 at 20-30.)

Dish responded to the Amended Complaint by filing the present motion arguing ACE has failed to present an "actual controversy," which is necessary to invoke this Court's subject matter jurisdiction over Plaintiff's claims for declaratory judgment. Specifically, Dish contends that ACE can show no actual controversy for Count 1, because ACE and Dish agreed four years ago as to which claims in the USA Lawsuit were covered. Further, Dish argues with respect to Count 2 that once ACE denied coverage in the Donaca Lawsuit, Dish determined no longer to pursue insurance coverage for that matter. Therefore, Dish asserts that ACE has failed to demonstrate an "actual controversy" as necessary to seek declaratory judgments in this case. Alternatively, Dish argues that the Court should exercise its discretion to decline jurisdiction over this case and either dismiss the action or stay it until the Underlying Lawsuits are concluded.

ACE responds that, because Dish does not contest its denial of coverage for the Donaca Lawsuit, ACE is entitled to a declaration of no coverage for Count 2. ACE also argues that an actual controversy exists with respect to the USA Lawsuit because ACE asserts that it has no obligation to pay ALAE under the 2004 and 2005 policies for costs in defending Dish against claims asserted by the States of California, Ohio, Illinois, and North Carolina for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Specifically, ACE contends it has no obligation to pay fines, penalties, punitive damages or injunctive relief for the alleged TCPA violations and Dish has failed establish it has fully satisfied its multiple deductible obligations under

9

each policy for each of the four state claimants.  ACE asserts that Dish's contrary position has consistently been that the 2004 and 2005 policies provide full coverage for the TCPA claims and that Dish has fully satisfied its deductible obligations.  Moreover, ACE argues that this action will fully resolve the controversy between ACE and Dish, and is independent of, and separable from, the USA Lawsuit.  Finally, ACE claims that the factors to be considered by the Court in determining whether to accept or decline jurisdiction weigh in its favor for accepting jurisdiction of the requested declaratory relief.

Dish replies that ACE concedes no controversy exists with respect to Count 2 of the Amended Complaint and, thus, the claim should be dismissed.  In addition, Dish argues that ACE concedes the potential for coverage of some claims and, thus, it is obligated to pay the costs of defending all claims asserted in the USA Lawsuit.  Finally, Dish contends that ACE fails to satisfy the factors necessary for the Court to determine whether to accept or decline jurisdiction, and ACE's anticipatory declaratory action is disfavored in Colorado.

The Court is now fully advised and recommends as follows.

## **LEGAL STANDARD**

### I.    **Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which

it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, in this case, ACE bears the burden of establishing that this Court has jurisdiction to hear its claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches alternative factual attacks on this Court's subject matter jurisdiction (*see, e.g., City of Aurora ex rel. Aurora Water v. P.S. Sys., Inc.*, No. 07-cv-02371-WYD, 2008 WL 4377505, at *7-*8 (D. Colo. Sept. 19, 2008); *Charles Machine Works, Inc. v. Digital Control Inc.*, 264 F. Supp. 2d 980, 981-82 (W.D. Okla. 2003)); therefore, the Court will accept evidence outside of the Amended Complaint to resolve disputed jurisdictional facts in this case.

## ANALYSIS

11

Dish seeks dismissal of both Counts 1 and 2 of the Amended Complaint asserting there exists no actual controversy as to either request for declaratory relief. The parties appear to agree that Dish has conceded ACE's denial of coverage for the Donaca Lawsuit alleged in Count 2; however, Dish argues that Count 2 should be dismissed while ACE contends that it is entitled to declaratory relief as to that count.

With respect to Count 1, the parties appear to agree that the only "potential coverage" available for the USA Lawsuit is to pay ALAE under the 2004 and 2005 policies for costs in defending Dish against claims asserted by the States of California, Ohio, Illinois, and North Carolina for alleged TCPA violations (as set forth in Counts 5 and 6 of the underlying complaint). However, Dish contends that ACE's simple acknowledgment of the potential for coverage obligates ACE to pay the defense costs for all claims asserted in the USA Lawsuit and, thus, there is no actual controversy requiring declaratory relief. ACE counters that there exists a controversy as to whether it has a duty to defend, saying that since there is only a "potential" for coverage, there is no actual coverage for the TCPA claims and, thus, it has no obligation to pay defense costs now.

Alternatively, regarding Count 1, Dish asks the Court to exercise its discretion to decline jurisdiction over the request for declaratory relief, arguing that the factors a court must consider in determining whether to exercise discretion weigh in favor of declining jurisdiction. ACE counters that the factors, in fact, weigh in favor of accepting jurisdiction. In so doing, the parties proffer opposing arguments as to whether Colorado favors or disfavors anticipatory declaratory judgment actions.

The Court will analyze the parties' arguments beginning with the proper disposition of Count 2. The Court will then analyze whether Count 1 presents an actual controversy; if so, the Court will

determine whether the Court should accept or decline jurisdiction over Count 1.

## I.   Disposition of Count 2

In Count 2, ACE seeks declarations pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 essentially that it has no obligation to pay the ALAE incurred in the defense of Dish in the Donaca Lawsuit.

The Uniform Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998). The DJA explicitly incorporates the case or controversy requirement of the Constitution by stating: "In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

"It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the ***defendant toward the plaintiff***." *Jordan v. Sosa,* 654 F.3d 1012, 1025 (10th Cir. 2011) (emphasis in original) (citations omitted). In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Id.*

Here, Dish claims that it received a letter from ACE "denying the potential for coverage for any claim asserted in the *Donaca Lawsuit*" and "Dish Network is not challenging ACE's denial of Coverage in the *Donaca Lawsuit*." Declaration of Jenny Palasz, June 18, 2013 ("Palasz Declaration"), ¶¶ 7, 8, docket #22-1. ACE does not dispute Dish's position and makes no argument that a controversy existed between ACE and Dish concerning coverage for the Donaca Lawsuit

before the filing of the Palasz Declaration. *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1385 (10th Cir. 2011) ("an actual controversy exists only when the parties have taken adverse positions with respect to their existing obligations") (citation and internal quotations omitted)). Therefore, because ACE fails to demonstrate that its requested declarations will affect Dish's behavior concerning coverage for the Donaca Lawsuit (*see Jordan*, 654 F.3d at 1025), the Court must conclude that ACE fails to establish this Court's subject matter jurisdiction over its request for declaratory relief in Count 2. *See Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997) (holding that the case or controversy requirement was not met because the plaintiff's requested declaratory relief was moot). Accordingly, this Court respectfully recommends that the District Court grant Dish's motion to dismiss Count 2 for lack of subject matter jurisdiction.

## II.    Disposition of Count 1

In Count 1, ACE seeks declarations pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 essentially that it has no obligation to pay the ALAE incurred in the defense of Dish in the USA Lawsuit.  Dish argues that because ACE concedes the "potential for coverage" exists with respect to certain claims asserted in the USA Lawsuit, it is obligated to pay the defense costs for all claims and, thus, no controversy exists for the requested declaratory relief. Alternatively, Dish asks the Court to exercise its discretion to decline jurisdiction over Count 1.  The Court will address each challenge in turn.

### A.    Actual Controversy

To establish that a case or controversy exists, ACE must demonstrate that the controversy is: (1) definite, concrete, and touches on the legal relations of the parties, and (2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937); *see also North*

*Carolina v. Rice*, 404 U.S. 244, 246 (1971) (a declaratory judgment action "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts"). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

Here, Dish argues that because both ACE and Dish agree there is a potential for coverage for some claims in the USA Lawsuit, then pursuant to prevailing law, ACE must advance costs to defend Dish for all claims asserted in the suit, and there is no actual controversy.  Dish contends that an "insurer must defend whenever the underlying complaint against its insured alleges any facts or claims that may fall potentially with the coverage of the insurance policy.  ... [O]nce the duty to defend is triggered, the insurer is obliged to defend the entire action, including claims that would otherwise fall outside of coverage."  Motion, docket #22 at 8.  Dish claims ACE has "no legal right to take an adverse position to Dish on this point."  *Id.* at 9.

ACE counters that an actual controversy exists because ACE "has consistently reserved its right to deny coverage altogether on the grounds, *inter alia*, that Counts 5 and 6 seek fines, penalties, punitive or exemplary amounts or injunctive relief which are not damages ... and, in any event, ACE has no obligation to pay reasonable and necessary ALAE incurred by Dish in defending the USA Lawsuit until Dish establishes that it has fully satisfied its multiple deductible obligations under each of the 2004 and 2005 ACE policies for each of the four state claimants, by payment of reasonable

and necessary defense costs in connection with covered claims, which Dish has not done." Response, docket #28 at 4(citations omitted).  ACE argues that, as a result, "no obligation to pay defense costs now exists."  *Id.* at 6.

The existence of a duty to defend against a particular claim is a question of law.  *Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1193 (10th Cir. 2010) (citing *Flannery v. Allstate Ins. Co.,* 49 F. Supp. 2d 1223, 1227 (D. Colo. 1999)).  "When resolving an insurer's obligations in an anticipatory declaratory action brought before the conclusion of the underlying dispute, an insurer's duty to defend is determined from the face of the complaint." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004).[2]  The court must compare the allegations of the underlying complaint and the relevant provisions of the insurance policy.  *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).  "An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy." *Id.* (citation omitted).

Here, in arguing that no controversy exists, Dish essentially asserts that ACE's duty to defend was automatically triggered by ACE's coverage letter conceding the "potential for coverage" for certain claims asserted against Dish in the USA Lawsuit.  However, such extrinsic evidence may not be used to trigger a duty to defend under Colorado's "complaint rule":

> As a general rule under Colorado law, an insurer's duty to defend an insured is triggered solely on the basis of the allegations made within the four corners of the complaint, read against the insurance policy. The Colorado Supreme Court has consistently held that an insurer's duty to defend arises *solely* from the complaint in the underlying action. ... A court determining whether a duty to defend exists must restrict its examination to the four corners of the complaint.

---

[2]"A federal court sitting in diversity applies the substantive law of the forum state." *Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1294 (10th Cir. 1996).

*United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960 (10th Cir. 2011) (citations and quotations omitted) (emphasis in original).  Importantly, Dish does not point to any allegation in the underlying pleading itself, which might trigger ACE's duty to defend.  Moreover, Dish provides no precedential nor persuasive case law (and the Court has found none) supporting the proposition that a duty to defend may be triggered by the insurer's written concession, made outside the four corners of the underlying complaint, that a potential for coverage exists for certain claims asserted against the insured.  In fact, in *United Fire*, the Tenth Circuit, in determining a duty to defend, declined to consider information gleaned from a letter and a report in which the insurance company purportedly conceded property damage due to ongoing, as opposed to completed, operations in the improper installation of, and/or high moisture content in, the subject flooring.[3]  *Id.*

Dish might argue that *United Fire* is distinguishable because ACE's written concession originated from its examination of the underlying complaints.  Dish does not cite specifically to any portion of the letters from ACE (totaling 44 pages and attached as Exhibits A and B to the motion) demonstrating that ACE concedes a potential for coverage, but the Court's review of the most recent letter reveals that ACE informs Dish of its "Analysis of ACE Policy Provisions Relevant to the Complaints" concluding

> **A.      Potentially Covered Claims**.  There is no potential for coverage for Counts 1-4 and 7-12 of the Second Amended Complaint under any of the ACE Policies.  There is only a limited potential coverage for Counts 5-6 of the Second Amended Complaint under the 2004 and 2005 ACE policies, but only: (1) to the extent Dish is an insured under the 2004 and 2005 ACE Policies, (2) for calls that were not willfully and knowingly made during each respective policy period and which do not result in fines, penalties or punitive damages, and (3) to the extent that those calls

---

[3]In fact, the *United Fire* court noted its reluctance to expand the complaint rule for a third time to include consideration of evidence outside the four corners of the underlying complaint in determining a duty to defend. *Id.* at 961.

> qualify as Coverage B "personal and advertising injury" offenses for an "oral or written publication in any manner, of material that violated a person's right to privacy.["] However, as a result of the Court's orders staying prosecution of Counts 5 and 6, no coverage is afforded for ANY of the currently viable Counts in the Lawsuit.

April 30, 2013 Letter from John Roth to Lee Epstein, docket #22-3 at 5. Thus, even if the Court were to accept the extrinsic written concession as a trigger to a duty to defend, ACE in fact denies coverage exists for Counts 5-6, for which it had characterized a "potential" for coverage. ACE's purported "concession" is inconclusive, at best.

In the operative Amended Complaint here, ACE seeks a determination that it owes no duty to defend or to advance defense costs for any of the claims asserted against Dish in the USA Lawsuit. Even for those counts for which ACE has characterized "potential coverage," ACE seeks a declaration that "ACE has no duty to defend Dish under the 2004-2008 Policies or the Excess Policies." Amended Complaint, ¶ 48(r), docket #12. Moreover, in examining the First Amended Complaint in the USA Lawsuit, ACE notified Dish in 2009 that

> ACE has further concluded for the reasons discussed below that ACE has no duty to defend DNLLC against potentially covered Counts in the First Amended Complaint, nor to pay any "allocated loss adjustment expense" [ALAE] within the $500,000 Deductible amounts under each of the 2004 and 2005 ACE Policies, with respect [to] personal and advertising injury alleged[ly] sustained by each of [the] Plaintiffs State of California, State of Illinois, State of North Carolina, and State of Ohio as alleged in the First Amended Complaint.

June 3, 2009 Letter from Emma Ladendecker to Robert Frankel, docket #22-2 at 8. Dish, as would be expected, contends that ACE, in fact, has a duty to defend and to advance costs for the defense of Dish in the current and ongoing USA Lawsuit. Thus, the Court is not convinced there is or has been any "agreement" between ACE and Dish concerning whether ACE's duty to defend has been triggered. Accordingly, the Court finds that ACE has demonstrated an actual controversy "between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127.

      B.      <u>Discretion to Accept/Decline Jurisdiction</u>

      Once a district court is satisfied that an "actual controversy" exists, it may then determine

whether to employ the permissive language of the DJA.  *Water Pik, Inc. v. Med-Sys., Inc.*, No. 10-

cv-01221-PAB, 2011 WL 843916, at *2 (D. Colo. Mar. 8, 2011).  "The Declaratory Judgment Act

provides, in relevant part: 'In a case of actual controversy within its jurisdiction, ... any court of the

United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought.'"  *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d

977, 980 (10th Cir. 2012) (quoting 28 U.S.C. § 2201(a)) (emphasis in original).  The Supreme Court

has held that the DJA's use of the word "may" confers upon courts the power, but not the duty, to

hear claims for declaratory judgment.  *Id.* (citing *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286-87

(1995)).  Accordingly, the Tenth Circuit instructs district courts to consider the following factors

from *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994) in determining whether

to exercise their discretion:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of procedural fencing or to
> provide an arena for a race to *res judicata*; [4] whether use of a declaratory action
> would increase friction between our federal and state courts and improperly encroach
> upon state jurisdiction; and [5] whether there is an alternative remedy which is better
> or more effective.

*Id.* at 980-81 (quoting *Mhoon,* 31 F.3d at 983).  "[T]he discretion afforded to district courts to

administer the declaratory judgment practice is broad." *Innovative Therapies, Inc. v. Kinetic*

*Concepts,* 599 F.3d 1377, 1385 (Fed. Cir. 2010) (citing *Wilton*, 515 U.S. at 287). However, a district court must consider the "equitable, prudential, and policy arguments" that weigh on the Court's discretionary decision either to entertain or to dismiss a declaratory judgment action. *Water Pik, Inc.*, 2011 WL 843916 at *2 (citing *MedImmune,* 549 U.S. at 136).

      1.    *Factors 1 and 2*

Courts commonly analyze the first two *Mhoon* factors together. *See Mid-Continent Cas. Co.*, 685 F.3d at 982. "[T]he inquiry into whether the declaratory judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall questions of whether the controversy would be better settled in state court." *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002). "Some courts have resolved the first two *Mhoon* factors in favor of exercising jurisdiction when a declaratory judgment action would settle the immediate controversy between the parties to the action." *Mid-Continent Cas. Co.*, 685 F.3d at 982 n. 3 (citing *Nw. Pac. Indem. Co. v. Safeway, Inc.*, 112 F. Supp. 2d 1114, 1120 (D. Kan. 2000)). "Other courts have resolved the first two *Mhoon* factors against exercising jurisdiction when the declaratory judgment action would leave unresolved other, related issues in parallel state court proceedings." *Id.* (citing *Qwest Commc'ns Int'l, Inc. v. Thomas,* 52 F. Supp. 2d 1200, 1207 (D. Colo. 1999)).

"A federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). When exercising its discretion,

> a district court should consider whether the dispute can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can

> satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*The Ins. Co. of the State of Penn. v. Triton Dev., LLC*, No. 04-cv-01924-REB, 2005 WL 2359125, at *3 (D. Colo. Sept. 26, 2005) (quoting *Brillhart Excess Ins. Co.*, 316 U.S. at 495)).

Here, it is undisputed that the underlying action involves no insurance parties nor insurance coverage issues. Rather, the USA Lawsuit involves claims by the United States and the States of California, Illinois, North Carolina and Ohio against Dish for alleged violations of federal and state statutes governing telemarketing and sales. By contrast, Count 1 of the Amended Complaint here seeks an order declaring that, under the applicable insurance policies, ACE owes no duty to defend (and, thus, no duty to indemnify) Dish in the USA Lawsuit. Facially, there appears to be no similarity between the actions. *See Bd. of Cnty. Comm'rs of Boulder v. Rocky Mtn. Christian Church*, 481 F. Supp. 2d 1181, 1187 (D. Colo. 2007) (citing *Las Cruces*, 289 F.3d at 1183) ("[t]hese two factors primarily examine the identity of the parties and issues in the concurrent proceedings, and examine whether there is a degree of similarity.")

However, Dish argues that the controversy cannot be completely settled here because ACE seeks declarations that would require the joinder of other interested non-party insurance companies, including Traveler's Insurance Company. Motion, docket #22 at 13. ACE counters that its requested relief requires no such joinder, as "[t]he parties to this action are the only parties with adverse interests in the ACE Policies" and "no other parties are needed to address and resolve" the issues underlying ACE's prayers for relief #7 and #8.

The prayers for relief at issue here are:

(7)    If the Court finds that ACE has any obligation under any ACE Policy to pay ALAE incurred in defending Dish, or to defend Dish, in the USA Lawsuit, for a declaration as to each such ACE Policy that the obligation to pay ALAE incurred in

defending Dish does not commence until Dish has satisfied any deductible obligation or retained limit obligation under any other liability policy that potentially provides coverage to Dish for the USA Lawsuit, by payment of reasonable and necessary ALAE for defense of potentially covered claims in the USA Lawsuit.

(8)     If the Court finds that ACE has any obligation under any ACE Policy to pay ALAE incurred in defending Dish, or to defend Dish, on potentially covered claims in the USA Lawsuit, for a declaration as to each such ACE Policy that any such ACE obligations are shared with any other insurer that also has an obligation under its policies to pay ALAE incurred in defending Dish, or to defend Dish, on potentially covered claims in the USA Lawsuit.

Amended Complaint, docket #12 at 32-33. The Court agrees with ACE that the adjudication of these requests for relief will require only an analysis of the applicable insurance policies between ACE and Dish to determine whether such requests are authorized. Dish does not explain how or why the joinder of Travelers or any other interested insurance company to this action would be necessary or appropriate.

Further, Dish contends that ACE concedes the necessity to join Travelers by citing to a case in the United States District Court for the Central District of Illinois, *Travelers Property Cas. Co. of Am.f/k/a The Travelers Indemnity Co. of Illinois v. Dish Network, LLC* ("*Travelers*") in its Notice of Related Cases filed in this matter on June 7, 2013. *See* Notice of Related Cases, docket #21. However, while it is true that ACE notes, "*Travelers* and this case have some common questions of law [relating to insurance coverage in Colorado] and fact [both involve the USA Lawsuit], or the application of law to fact," ACE also notes that the cases have some questions "that are unique to each case, as the two cases involve one different underlying claim, different insurance companies, different insurance policies with different policy language, and different policy periods." *Id.* at 3. The Court finds that the common questions noted here are not necessarily applicable to the adjudication of the at-issue prayers for relief, but the differences certainly are. The Court is not

persuaded that Travelers, or any other interested insurance company, need be joined to completely

settle the present controversy.

Dish also contends that this declaratory judgment action will not necessarily serve a useful

purpose in clarifying the legal relations at issue, if resolution of the action results in prejudice to one

of the parties.   The Court is not convinced.   Dish contends that ACE requests declarations on

numerous issues that would prejudice Dish's defense of the underlying lawsuit:

> For example, ACE seeks declarations that no "occurrence" is alleged and that
> coverage is excluded by the "expected or intended" exclusion.  Thus, in proving that
> the injuries alleged in the Government Lawsuit were caused by an "accident" and
> were neither "expected or intended" for the purpose of securing insurance coverage,
> DISH could establish its own liability in the Government Lawsuit where proof of
> an intentional injury is not required.  *See Hartford*, 625 P.2d at 1016 ("resolution of
> the declaratory action first might well place [the insureds] in the dilemma of
> defending the coverage issue in that case by establishing that [the underlying]
> conduct, at most, amounted only to simple negligence").   Moreover, if ACE's
> declaratory judgment action were to result in a determination that DISH intended the
> injuries alleged, that could result in treble damages being awarded against DISH. *Id.*
> ("Moreover,  were the declaratory action to result in a determination that [the
> underlying conduct] . . . amounted to willful and wanton conduct, for which the
> insurers deny any contractual responsibility under their insurance agreement . . . , the
> plaintiff in the negligence action well might amend his complaint to assert willful
> and wanton conduct. . . .").  For the same reason, if ACE were able to establish in
> this action that coverage is excluded by virtue of the "knowing violation of the rights
> of another" exclusion that again could expose DISH to treble damages in the
> Government Lawsuit.
>
> ...
>
> Moreover, ACE is seeking declarations that no "bodily injury," "property damage,"
> "personal injury," or "advertising injury" is alleged and that the conduct alleged did
> not arise out of DISH's business.  Establishing the converse in this action would be
> detrimental to DISH's defense of the underlying Government Lawsuit.

Motion, docket #22 at 10-11 & n.10 (citations to the record omitted).

Citing the Colorado Supreme Court, ACE counters that Colorado law favors resolution of

an insurer's defense obligations through an <u>anticipatory</u> declaratory judgment action.  Response,

23

docket #28 at 9.  While this may be true, it is not necessarily binding on a federal court at what point

the Colorado state court determines when an insurer or insured may seek declaratory relief: during

or after the completion of the underlying action.  *Valley Forge Ins. Co. v. Health Care Mgmt.*

*Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010) (questioning "whether a state law rule

purporting to prevent parties from seeking a declaratory judgment until a specified time could bind

a federal district court and limit its congressionally-granted authority" under the DJA).  However,

*Valley Forge* cites with approval the opinion in *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556,

561 (Colo. 1997) asserting:

> The Colorado Supreme Court has said that it is "within the sound discretion of the
> trial court" whether to permit an insurer to seek such a declaration before the
> underlying litigation against the insured has come to an end. *Constitution Assocs. v.*
> *N.H. Ins. Co.,* 930 P.2d 556, 561 (Colo.1997). In making such a determination, the
> Colorado Supreme Court has emphasized that the "potential prejudice" to the insured
> is a primary consideration. *Id.* at 562. For this reason, a declaratory judgment action
> *is* permissible if it concerns issues that are "independent of and separable from those
> in the underlying action," because, as the court explained, it then would not "unduly
> prejudice the insured in the underlying action." *Id.*

*Valley Forge*, 616 F.3d at 1093-94 (emphasis in original).  The Court finds the analysis in

*Constitution Assocs.* instructive and in accord with an analysis of the *Mhoon* factors.  Therefore, in

determining whether Dish might be prejudiced by the adjudication of this action, the Court will

determine whether its issues are independent of and separable from those in the USA Lawsuit.

Where a declaratory action "could unduly prejudice the insured in the underlying action, a

declaratory judgment action prior to entry of a judgment against the insured is not independent and

separable and is inappropriate."  *Constitution Assocs.,* 930 P.2d at 562.

> The independent and separable standard helps to clarify some confusion in the law
> regarding the interrelationship between an anticipatory declaratory judgment action
> and the insurer's duty to defend versus the insurer's duty to indemnify. The duty to
> defend pertains to the insurance company's duty to affirmatively defend its insured

against pending claims. The duty to indemnify relates to the company's duty to satisfy a judgment entered against the insured. The duty to defend is triggered more easily than is the duty to indemnify. Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm. *See Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089-90 (Colo. 1991). Where there is no duty to defend, it follows that there can be no duty to indemnify. However, where there is a duty to defend, there is not necessarily a duty to indemnify.

Declaratory judgment claims are more likely to be independent of and separable from the underlying litigation when the allegations in the underlying complaint do not even give rise to a duty to defend. Where that occurs, it may be appropriate to allow the insurer an opportunity to obtain an anticipatory declaration of its obligations towards its insured prior to the expenditure of considerable resources.

On the other hand, where the duty to defend has arisen, anticipatory resolution of coverage issues is more problematic. In *Hecla,* the insurance companies were found to have a duty to defend against the pending claims, with a reservation of rights if they so chose, despite uncertainty about the companies' ultimate duty to indemnify. We concluded that the issue of coverage, or duty to indemnify would have to await final resolution of the underlying case. Hence, where there is a duty to defend, the duty to indemnify may not be neatly separable from the underlying facts.

*Constitution Assocs.,* 930 P.2d at 563-64 (footnotes omitted).

Dish argues that it will be prejudiced in its defense of the USA Lawsuit by litigating in this action ACE's requests for declarations that "no occurrence is alleged" (Amended Complaint, ¶ 48(b)), that "coverage is excluded by the 'expected or intended' exclusion" (*id.*, ¶ 48(c)), and that ACE has no defense obligations based on exclusions for "violation of statutes that govern e-mails, fax, phone calls or other methods of sending material or information" (*id.*, ¶ 48(j)), "distribution in violation of statutes" (*id.*, ¶ 48(k)), and "recording and distribution of material or information in violation of law" (*id.*, ¶ 48(l)).  ACE counters that its request for an order declaring it has no duty to defend or "pay ALAE" require only an analysis of the underlying lawsuit's operative pleading compared with the applicable policies, and not any determination of factual issues, such as whether

there was actually an "occurrence" that was "expected or intended."  The Court agrees.

The opinion in *Constitution Assocs.* is particularly helpful here with respect to its clarification of circumstances involving the determination of duties to defend and to indemnify. That is, in a situation where only the duty to defend is challenged, the analysis focuses solely on the allegations in the underlying complaint.  However, a challenge to the duty to indemnify requires a determination of whether there is coverage for the claim(s); thus, such determination typically must await the outcome of the underlying litigation.

In this case, ACE primarily seeks declarations that it owes no duties to pay ALAE and/or to defend Dish in the USA Lawsuit.  Therefore, the determination will require the District Court to analyze whether even potential coverage may be inferred <u>solely</u> from the allegations of the USA Lawsuit's operative pleading.  Dish's argument in this action that any "occurrence," "bodily injury," "property damage," "personal injury," or "advertising injury" is simply <u>alleged</u> by the plaintiffs in the underlying litigation would not affect its defense of whether any of these "injuries" actually occurred in the underlying case.  Further, Dish might object that ACE also seeks a declaration that it owes Dish no duty of indemnification in this case.  While this is true, ACE seeks such declaration <u>only</u> in the event that the Court find no duty to defend. *See Constitution Assocs.,* 930 P.2d at 563 ("Where there is no duty to defend, it follows that there can be no duty to indemnify.").  Therefore, the Court is not convinced that adjudication of this action would require the parties to argue the merits of whether coverage exists and, thus, will not prejudice Dish in the USA Lawsuit.

The Court concludes that the first two factors weigh in favor of the District Court hearing this declaratory judgment action.

26

2.      *Factor 3*

The third factor from *Mhoon* requires a district court to consider "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*." *Mid-Continent Cas. Co.*, 685 F.3d at 980-81 (quoting *Mhoon,* 31 F.3d at 983). Dish contends that ACE has been proceeding under a reservation of rights, without paying any defense costs, since 2009 and, thus, "the only reasonable explanation for ACE's filing of this action after more than four years' intransigence is its attempt to gain some perceived, procedural advantage." Motion, docket #22 at 14.  ACE counters that there is no evidence demonstrating ACE is motivated by any procedural fencing or a race to res judicata.

"A district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (affirming the district court's rejection of a declaratory judgment action where insurer filed the action one day before the insured promised to file state court action against insurer). The Tenth Circuit has recognized "procedural fencing" and "a race to res judicata" where an identical or substantially similar action is proceeding in state court or where "the constitutionality of declared social and fiscal policies of a sovereign state is challenged in federal courts." *See Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 656 (10th Cir. 1946); *see also Bd. of Cnty. Comm'rs of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181, 1188 (D. Colo. 2007) (finding that the declaratory judgment action presented the precise issue presented in a state court lawsuit and the action was "nothing more than a protective procedural maneuver that seeks to trump the [defendant's] pre-existing substantive RLUIPA claim").

This Court has already concluded that there are no similarities between the present

27

declaratory judgment action and the USA Lawsuit.  Further, this action does not challenge the constitutionality of any state social or fiscal policies.  Without something more than speculation that ACE seeks to "gain some perceived, procedural advantage," the Court must conclude that the third factor weighs in favor of hearing the present declaratory judgment action.

3.      *Factors 4 and 5*

The fourth and fifth factors require a district court to consider "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [] whether there is an alternative remedy which is better or more effective." *Mid-Continent Cas. Co.*, 685 F.3d at 980-81 (quoting *Mhoon,* 31 F.3d at 983).

Dish and ACE agree that the fourth factor is not applicable to the present analysis; however, Dish contends that the factor should not be considered and ACE argues the factor should weigh in favor of invoking jurisdiction.  The Court agrees with Dish, finds the factor inapplicable and weighs it in favor of neither ACE nor Dish.  *See ICON Health & Fitness, Inc. v. Beachbody, LLC*, No. 11-cv-00024-TC, 2011 WL 1899390, at *2 (D. Utah May 19, 2011) (finding that, because the fourth factor was inapplicable, it was not weighed in the analysis).

With respect to the fifth factor, Dish cites the Colorado Supreme Court's opinion that "[t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement  should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action *after* the underlying case has been adjudicated."  Motion, docket #22 at 14-15 (citing *Hecla*, 811 P.2d at 1089-90) (emphasis in original).  Accordingly, Dish contends that ACE can avail itself of a declaratory action after resolution of the USA Lawsuit.  ACE counters

that the fifth factor looks solely to whether there is an alternative proceeding that would resolve the controversy, and asserts that there is no other pending proceeding that addresses ACE's requests for declaratory action.

As set forth above, the Tenth Circuit has questioned whether a federal court can be directed by a state court as to when a party might file a declaratory judgment action in federal court.  *See Valley Forge Ins. Co.*, 616 F.3d at 1093 (questioning "whether a state law rule purporting to prevent parties from seeking a declaratory judgment until a specified time could bind a federal district court and limit its congressionally-granted authority" under the DJA).  Therefore, the Court is not persuaded that ACE <u>must</u> wait until the resolution of the USA Lawsuit to seek declarations as to its defense obligations and, thus, the Court finds such timing is not necessarily better or more effective. Rather, the Court agrees that the issues raised in the present action are not presented in any other proceeding and finds that a stay of the action until the USA Lawsuit resolves would not promote justice here.  Consequently, the Court finds that the fifth factor weighs in favor of the District Court hearing the present controversy.

In sum, this Court concludes that the *Mhoon* factors weigh in favor of the District Court exercising its discretion to entertain Count 1 of ACE's declaratory judgment action.  As such, this Court respectfully recommends that the District Court find ACE has demonstrated this Court should exercise its discretion to hear the actual controversy surrounding Count 1 and deny Dish's motion to dismiss Count 1 of the Amended Complaint.

## <u>CONCLUSION</u>

Dish does not challenge ACE's denial of coverage for the Donaca Lawsuit; therefore, there

29

is no actual controversy with respect to Count 2 of the operative Amended Complaint in this case and this Court recommends that the District Court grant Dish's motion to dismiss Count 2. However, the Court finds an actual controversy with respect to Count 1 and determines that the District Court should exercise its discretion to hear Count 1 of the operative Amended Complaint in this case. Accordingly, this Court recommends that the District Court deny Dish's motion to dismiss Count 1.

THEREFORE, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Defendant's Motion to Dismiss this Action [filed June 21, 2013; docket #22] be **GRANTED IN PART AND DENIED IN PART** as set forth herein.

Entered and dated at Denver, Colorado, this 13th day of August, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge