**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00560-REB-MEH

ACE AMERICAN INSURANCE COMPANY,

    Plaintiff,

v.

DISH NETWORK, LLC,

    Defendant.

---

**ORDER CONCERNING CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

This matter is before me on the following: (1) **ACE American Insurance Company's Motion for Summary Judgment and Supporting Memorandum** [#97][1] filed June 15, 2015; and (2) the **Motion of DISH Network L.L.C. for Partial Summary Judgment and Supporting Memorandum of Law** [#102] filed June 15, 2015. The parties filed responses [#121 & #127] and replies [#140 & #146]. The plaintiff filed a notice [#164] of a recent decision, and the defendant filed a joinder [#168] concerning that notice. The two motions are cross motions for summary judgment which, for the most part, address the same issues. I grant the motion of ACE American Insurance Company and deny the motion of DISH Network LLC.

**I. JURISDICTION**

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity).

---

[1] "[#97]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2] **FED. R. CIV. P.** 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works*, 36 F.3d at 1518. All

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers.

the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

This case concerns the duty of an insurance company to defend its insured in a lawsuit as well as the duty of an insurance company to indemnify its insured for any damages awarded against the insured in the lawsuit. The parties agree that Colorado law controls the interpretation of the insurance policies in question. Under Colorado law, a determination of the duty of an insurer to defend an insured in an underlying lawsuit is made by examining the terms of the insurance policy and the allegations made against the insured in the complaint in the underlying lawsuit. ***DISH Network Corp. v. Arch Specialty Ins. Co.***, 659 F.3d 1010, 1015-16 (10th Cir. 2011). "In the duty to defend context, the 'complaint rule' operates to cast a broad net, such that when the underlying complaint alleges any facts or claims that might fall within the ambit of the policy, the insurer must tender a defense." ***Cyprus Amax Minerals Co. v. Lexington Ins. Co.***, 74 P.3d 294, 301 (Colo.2003). While this determination normally is limited to the underlying complaint and the policy, "[e]xtrinsic evidence constituting 'an indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation' is admissible." ***Dish Network Corp. v. Arch Specialty Ins. Co.***, 989 F. Supp. 2d 1137, 1150 (D. Colo. 2013) (***quoting Pompa v. American Family Mut. Ins. Co.***, 520 F.3d 1139, 1147 (10th Cir.

3

2008)), *aff'd* 772 F.3d 856 (10th Cir. 2014).

The insurer resisting a duty to defend has "a heavy burden to overcome in avoiding the duty to defend, such that the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." ***Cyprus Amax***, 74 P.3d at 301 (internal quotation and citation omitted). In order to defeat its duty to defend, "an insurer must establish that 'there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.'" ***Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.***, 90 P.3d 814, 829 (Colo. 2004) (***quoting Hecla Mining Co. v. N.H. Ins. Co.***, 811 P.2d 1083, 1089 (Colo. 1991)). In cases of doubt, the insurer must defend its insured. ***Compass Ins. Co. v. City of Littleton***, 984 P.2d 606, 614 (Colo. 1999) (***quoting Hecla***, 811 P.2d at 1089) (If "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim").

An insurer, however, "has no duty to defend if the claims asserted in the complaint are clearly excluded from coverage." ***Lopez v. Am. Family Mut. Ins. Co.***, 148 P.3d 438, 439 (Colo. App. 2006). If there is no duty to defend, there is no duty to indemnify. ***City of Arvada v. Colorado Intergovernmental Risk Sharing Agency***, 988 P.2d 184, 187 (Colo. App. 1999), *aff'd*, 19 P.3d 10 (Colo. 2001).

In Colorado, insurance policies are construed using the same traditional principles of interpretation that apply to construction of contracts generally. ***Compass Insurance***, 984 P.2d at 613. Unambiguous terms are interpreted in accordance with their plain and ordinary meanings. ***MarkWest Hydrocarbon, Inc. v. Liberty Mutual Insurance Co.***, 558 F.3d 1184, 1190 (10th Cir. 2009). Insurance policy terms are ambiguous only if they are subject to more than one reasonable interpretation. ***Allstate Insurance Co. v. Juniel***,

4

931 P.2d 511, 513 (Colo. App. 1996). Truly ambiguous terms are construed against the insurer and in a manner that would promote rather than deny coverage. ***Blackhawk-Central City Sanitation District v. American Guarantee & Liability Insurance Co.***, 214 F.3d 1183, 1191 (10th Cir. 2000).

## III.  BACKGROUND

This case is an action for declaratory judgment filed by ACE American Insurance Company (ACE). ACE seeks a declaratory judgment concerning its obligation to provide for the defense of the defendant, DISH Network, LLC (DISH), in an underlying lawsuit. In the underlying suit, the United States and four states allege that DISH violated federal and state laws regulating telemarketing, including the Telemarketing Act and the Telephone Consumer Protection Act (TCPA). ***U.S., et al. V. DISH Network LLC***, Case No. 3:09-cv-03073 (C.D. Illinois) (underlying suit). ACE seeks a declaratory judgment declaring that ACE has no duty to defend or to indemnify DISH with respect to any of the claims in the underlying suit.[3]

In the underlying suit, the plaintiffs, the United States of America and the states of California, Illinois, North Carolina, and Ohio, allege DISH violated the TCPA and related state and federal laws by making outbound telephone calls to numbers on the National Do Not Call Registry and by making outbound telephone calls to telephone numbers of persons who have stated they do not wish to receive calls from or on behalf of DISH. In addition, the plaintiffs in the underlying suit allege DISH violated the TCPA and related state and federal laws by failing to connect calls to a representative within two seconds of

---

[3] Initially, this case involved a second underlying suit, ***Donca v. Dish Network, LLC***, 11-cv-02910 (D. Colo.). DISH has conceded that it is not entitled to coverage from ACE for the claims asserted in the ***Donca*** case. *Declaration of Jenny Palasz* [#22-1] filed June 18, 2013, ¶¶ 7, 8. Thus, the claims in underlying suit specified above are the only underlying claims now at issue.

a consumer's completed greeting and by initiating telephone solicitations using artificial or prerecorded voices without the prior express consent of the called party. The plaintiffs in the underlying suit allege that the violations by DISH began in October 2003 and continue unabated. The plaintiffs in the underlying suit seek statutory damages, civil penalties, and a permanent injunction to prevent future violations of the TCPA and related state and federal laws. The third amended complaint in the underlying suit is docketed as [#98], pp. 5 - 35 (underlying complaint).

A series of insurance policies issued by ACE to DISH are at issue in this case. ACE issued four general liability policies to EchoStar Corp., the predecessor of DISH, for consecutive annual periods from August 1, 2004, through August 1, 2008. [#12-5 (2004), #12-6 (2005), #12-7 (2006), [#12-8, #12-9] (2007). ACE issued three general liability policies to DISH for consecutive annual periods form August 1, 2008, to August 1, 2011. [#12-10, #12-11, #12-12] (2008), [#12-13] (2009), [#12-14] (2010). ACE then issued two excess liability policies to DISH for consecutive annual periods from August 1, 2011, to August 1, 2013. [#12-15] (2011), [#12-16] (2012).

The coverages at issue are categorized in the policies as Coverage A and Coverage B.[4] Coverage A covers bodily injury and property damage caused by an "occurrence." *See, e.g., 2010 - 2011 policy* [#12-10] (2008 - 2009 Policy), CM/ECF p. 12, Section I, Coverage A, ¶ 1(b). An "occurrence" means an accident. *Id.*, CM/ECF p. 25, Section V, ¶ 13. Coverage A covers "those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance

---

[4] In describing the relevant coverages, I quote language used in the 2008 - 2009 policy [#12-10]. Except for a coverage limitation concerning TCPA-type claims which limitation was added to later policies, the parties point to no other differences in the relevant coverage language used in the series of ACE policies at issue.

6

applies." *Id.*, CM/ECF p. 12, Section I, ¶ 1(a).

ACE contends Coverage A does not apply to the underlying suit because the plaintiffs in the underlying suit to not seek damages covered by Coverage A. In addition, ACE argues Coverage A does not apply to the underlying suit because the calls allegedly made by DISH and the injuries suffered by those who received the calls do not fit the definition of "occurrence," an accident, as that term is used in Coverage A.

Coverage B covers "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." *Id.*, CM/ECF p. 17, Section I, Coverage B, ¶ 1(a). Personal and advertising injury includes injury arising out of "(o)ral or written publication, in any manner, of material that violates a person's right of privacy." *Id.*, CM/ECF p. 25, Section V, ¶ 14.

ACE contends Coverage B does not apply to the underlying suit because Coverage B includes an exclusion of coverage for insureds in media and internet type businesses. According to ACE, DISH falls within this exclusion and is not entitled to coverage under Coverage B.[5]

## IV. COVERAGE A - DAMAGES

ACE contends Coverage A is not applicable to the claims in the underlying suit because the remedies sought in the underlying suit are limited to uninsurable and uninsured penalties, disgorgement, restitution, and injunctive relief, none of which constitute "damages" under Coverage A. The ACE policies do not define the term damages. Black's Law Dictionary defines damages as "(m)oney claimed by, or ordered to be paid to, a person as compensation for loss or injury" or "the sum of money which a

---

[5] ACE raises additional arguments related to Coverage B.

person wronged is entitled to receive from the wrongdoer as compensation for the wrong." ***Black's Law Dictionary*** (10th ed. 2014).   Webster's Third New International Dictionary defines damage as "loss due to injury; injury or harm to person, property or reputation." ***Webster's Third New International Dictionary*** (1971), 571.  Webster's defines damages as "the estimated reparation in money for detriment or injury sustained."  *Id*.  These definitions generally have the same meaning.  These definitions are the plain and ordinary meaning of the word damages.

### A.  TCPA STATUTORY DAMAGES

Despite the use of the word "damages" in the TCPA, I conclude that the statutory damages sought by the plaintiffs in the underlying suit are actually financial penalties sought against DISH as a mechanism to enforce the TCPA.  This is particularly true when, as in the underlying suit, a suit is brought under TCPA by the United States and four state governments.  Under Colorado law, such penalties, like punitive damages, may not be the subject of insurance coverage.  As a result, I conclude that the statutory damages at issue in the underlying suit are not damages that fall within the purview of Coverage A of the ACE policies covering DISH.

In the complaint in the underlying suit, the four plaintiff aver that they are authorized under the TCPA to file suit for violation of the TCPA and to obtain, *inter alia*, "damages or damages of $500 for each violation . . . ." *Underlying complaint*, ¶¶ 5, 6, 7, 8.[6]  The TCPA provides that states may bring an action to enforce the TCPA and may, *inter alia*, seek "to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions."  47 U.S.C. § 227(g)(1).  States also are authorized to ask the court to treble

---

[6] The states cite 47 U.S.C. § 227(f)(1) as authority for this proposition.  In the current version of the TCPA, this authority is granted to states in § 227(g)(1).

the amount of the award if the court finds the defendant willfully or knowingly violated regulations promulgated under the TCPA. *Id*.

DISH contends the allegations in paragraphs 5, 6, 7, and 8 of the underlying complaint indicate that the state plaintiffs are seeking actual damages. If so, DISH contends, the underlying complaint asserts a claim for damages which triggers coverage under the ACE policies.

The reading proposed by DISH is not the most accurate reading of the underlying complaint. In paragraphs 5, 6, 7, and 8 of the underlying complaint, the state plaintiffs indicate they have the authority to bring an action for actual damages and to seek a variety of other relief. Reading the claims actually asserted in the underlying complaint, however, the state plaintiffs never assert a claim for actual damages and do not state a prayer for relief in the form of actual damages. Rather, under the TCPA, the state defendants seek an award of $500 per violation or, if the violation is found to be willful and knowing, an award of $1,500 for each such violation. *Underlying complaint*, ¶¶ 70 - 100, Prayer for Relief, ¶¶ 1 - 17. Under the parallel state statutes addressed in the underlying complaint, the state plaintiffs do not assert any claim for damages. Under the TCPA and the state statutes, all of the state plaintiffs seek relief in the form of (a) $500 per violation under the TCPA; (b) treble damages for each knowing and willful violation under the TCPA; (c) civil penalties under the TCPA and related state statutes; (d) civil penalties under the Federal Trade Commission Act; and (e) injunctive relief prohibiting DISH from violating the TCPA and the state statutes in the future. The United States does not seek damages of any kind.

ACE claims an award of 500 dollars per violation under the TCPA is a penalty which

9

may not be covered by insurance under Colorado law. If so, ACE asserts, a claim for 500 dollars per violation under the TCPA can not be damages covered under Coverage A. In a non-insurance context, the Colorado Supreme Court has held that a "statutory claim for $500 in liquidated damages" under the TCPA "is a claim for a penalty." *Kruse v. McKenna*, 178 P.3d 1198, 1201 (2008). The question in *Kruse* was whether the plaintiff, Mr. McKenna, had standing to sue on claims for 500 dollars for each TCPA violation. *Id*. at 1998. The claims had been assigned to Mr. McKenna by a party who had received faxes from the defendant, allegedly in violation of the TCPA. *Id*. at 1199. Pursuing his assigned claims, Mr. McKenna did not seek recovery of any actual monetary loss. *Id*. at 1200. Rather, he sought only an award of 500 dollars for each fax transmission which violated the TCPA and treble damages for willful violations. *Id*. Applying Colorado law, the *Kruse* court found that a "claim under the TCPA for $500 in liquidated damages per violation is a penalty that cannot be assigned." *Id*. at 1201.

In *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996), the Colorado Supreme Court held that the tort of bad faith breach of an insurance contract does not encompass liability for punitive damages from the underlying lawsuit. *Id*., at 518. The court noted that the "public policy of Colorado prohibits an insurance carrier from providing insurance coverage for punitive damages." *Id*. (citations omitted). According to ACE, if punitive damages may not be covered by insurance under Colorado law and a TCPA statutory award of 500 dollars is a penalty under Colorado law, then such a penalty may not be covered by insurance under Colorado law.

DISH cites cases from other courts which hold that an award of 500 dollars in statutory damages under the TCPA falls within the type of damages covered by most

10

commercial insurance policies. *Response* [#121], pp. 24 - 25 n. 20. None of these cases is a Colorado case. Seeking to determine Colorado law, as I must, I rely primarily on relevant holdings of the Colorado Supreme Court. In addition, in the underlying complaint, the plaintiffs are the United States and four individual states, not private plaintiffs who received allegedly improper sales calls from DISH. In the underlying complaint, none of the plaintiff governments claims they suffered monetary losses or other injuries as the result of the telephone solicitations of DISH. Rather, in the underlying complaint, the United States and four individual states pursue an enforcement action under the TCPA and related state statutes seeking to impose monetary penalties and to obtain injunctive relief in order to require DISH to comply with these laws. This aspect of the underlying suit indicates that actual damages are not at issue in the underlying suit. Rather, the plaintiffs seek financial and other penalties as proposed cudgels to induce compliance by DISH.

In contrast, some TCPA cases involve plaintiffs who have received telephone calls and faxes which violate the act. For example, in **Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.**, 401 F.3d 876 (8th Cir. 2005), the United States Court of Appeals for the Eight Circuit examined insurance coverage for statutory damages claims under the TCPA. The court concluded that statutory damages represent, at least in part, an award of actual damages for a violation of the TCPA. The court concluded that

> a portion of the fixed amount represents a liquidated sum for uncertain and hard-to-quantify actual damages. We noted in [**Missouri ex rel. Nixon v. American Blast Fax, Inc.**, 323 F.3d 649, 654 - 655 (8th Cir. 2003)], that Congress identified the loss of use of equipment and phone lines for outgoing and incoming faxes, the expense of paper and ink, and the resultant inconvenience and annoyance as examples of the harm to individuals who receive unsolicited fax advertisements. Further we noted that, "unsolicited fax advertisements can shift to the recipient more than one hundred dollars per year in direct costs, ... and ... unsolicited fax advertising interferes with company switchboard operations and burdens the computer networks of

> those recipients who route incoming faxes into their electronic mail systems."
> *Id*. at 655. These harms, while small in reference to individual violations of
> Act, nevertheless represent compensable harms encompassed by a
> liquidated sum within the fixed amount.

*Id*. at 881.

The Colorado Supreme Court has not addressed the precise issue presented by ACE. In that circumstance, a federal court exercising diversity jurisdiction seeks to predict how the Colorado Supreme Court would resolve the issue presented. *Farmers Alliance Mutual Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980). The decisions of the Colorado Supreme Court, other state courts, federal courts, and the general weight and trend of authority may be considered. *Id*.

Interpreting the ACE policies under Colorado law, as I must, I agree with ACE that quintessentially, the statutory award is punitive, not compensatory or remedial. The Colorado Supreme Court has held that an award of 500 dollars in statutory damages under the TCPA is a penalty. Generally, Colorado law prohibits insurance coverage for punitive damages. Given these holdings, I predict that the Colorado Supreme Court would hold that an award of 500 dollars per violation under the TCPA, as sought in the underlying suit, constitutes a penalty or an ilk of punitive damages which may not be covered by insurance under Colorado law.

The rationale of cases like *Lou Fusz Automotive* are not apposite to the present case. The plaintiffs in the underlying suit do not seek damages for the purpose of compensating themselves or anyone else for actual injury allegedly inflicted by DISH. Rather, they seek relief under the statute as a financial penalty against DISH as a mechanism to enforce the laws at issue in the underlying suit and to deter future violations. Under Colorado law, such a financial penalty may not be covered by insurance. Such a

penalty does not fall within the term "damages" as used in Coverage A.  Thus, the statutory award of 500 dollars per occurrence sought in the underlying suit do not fall within Coverage A in the ACE policies.

### B.  INJUNCTIVE RELIEF

DISH claims also that the injunctive relief sought in the underlying suit constitutes damages covered by Coverage A.  Contrastingly, ACE contends the injunctive relief sought in the underlying suit may not properly be characterized as damages.

In the underlying complaint, the United States seeks a permanent injunction prohibiting DISH from violating the Federal Trade Commission Act (FTC Act) and the FTC Telemarketing Sales Rule (TSR Rule).  *Underlying complaint*, Prayer for Relief, ¶ 3.  The state plaintiffs seek an injunction prohibiting DISH from violating the TCPA, the FTC Act, the TSR Rule, and specified parallel state laws.  *Id.*, Prayer for Relief,  ¶¶ 4 - 17.  Without question, the injunctions sought are forward-looking, focused on preventing future violations, not on remedying past violations.

The parties cite **Compass Ins. Co. v. City of Littleton**, 984 P.2d 606 (Colo.,1999) as guidance on this issue.  In **Compass**, the Colorado Supreme Court held that the undefined term "damages" in an insurance policy included response or cleanup costs sought by the Environmental Protection Agency from two cities for pollution allegedly caused those cities.  The court held that "the ordinary meaning of 'damages' is broad and covers environmental response costs."  *Id*. at 623.  I find that **Compass**, which on its facts addresses actual and measurable expenses,  provides little guidance on the issue of whether the injunctive relief sought in the underlying suit constitutes damages as that term is used in the ACE policies.

13

If granted, the injunctions sought by the plaintiffs in the underlying suit would say, in effect, "the court orders you to stop violating these specific laws, now and in the future." Such an order would not require payment of a sum of money by DISH to a person or entity allegedly wronged by receiving unlawful phone calls from DISH. Such an order would not require DISH to compensate such a person or entity for such a wrong. Such an order would not legally obligate DISH to pay damages to a person or entity wronged by DISH.[7] Therefore, I conclude that the prospective injunctive relief sought in the underlying suit does not fall within the ordinary meaning of the word damages. Accordingly, the injunctive relief sought in the underlying suit does not fall within Coverage A in the ACE policies.

### C. CONCLUSION

Coverage A applies only to damages for bodily injury or property damage. In the underlying suit, the plaintiffs do not seek any relief that falls within the ordinary meaning of the term damages. To the extent the plaintiffs in the underlying suit seek monetary relief, the relief sought is in the form of punitive damages and civil penalties. Such relief does not fall within the ordinary meaning of the term damages. Further, under Colorado law, punitive damages and civil penalties may not be covered by insurance. The injunctive relief sought in the underlying suit does not fall within the ordinary meaning of the term damages. In the final analysis, the underlying suit does not include any claims that might fall within the ambit of Coverage A of the ACE policies. Thus, I need not address the other issues raised by the parties concerning Coverage A.

### V. COVERAGE B - BROADCASTING & TELECASTING EXCLUSION

---

[7] Although there is no evidence in the record to show this, such an order might require DISH to close down a telephone marketing operation. That effort might cost DISH some money. However, those costs would not compensate a person wronged by DISH in the ways alleged in the underlying suit.

Coverage B covers "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." *2008 - 2009 Policy* [#12-10], CM/ECF p. 17, Section I, Coverage B, ¶ 1(a).  The United States Court of Appeals for the Tenth Circuit has held that a TCPA invasion of seclusion claim might be covered by an advertising injury policy provision essentially identical to the provision at issue here.  **Park Univ. Enters. v. Am. Cas. Co.**, 442 F.3d 1239, 1251 (10th Cir. 2006), abrogated on other grounds by **Magnus, Inc. v. Diamond State Ins. Co.**, 545 Fed.Appx. 750, 753 (10th Cir. 2013).

ACE contends an exclusion in Coverage B excludes DISH from coverage for the claims in the underlying suit.  Coverage B excludes coverage for personal and advertising injury if the insured is in a media and internet type business.  *Id.*, CM/ECF p. 17, Section I, Coverage B, ¶ 1(j).   This exclusion excludes coverage for

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

*Id.*  ACE contends DISH is in the business of broadcasting and, therefore, this exclusion eliminates coverage for the claims in the underlying suit under Coverage B. In response DISH contends it is not in the business of broadcasting, as that term is used in this provision, or the provision is ambiguous and must be construed to favor coverage for DISH.

In **Dish Network Corporation v. Arrowood Indemnity Company**, the Tenth Circuit examined a similar exclusion in policies insuring DISH.  772 F.3d 856 (10th Cir.

2014). As in the present case, the exclusion at issue in *Arrowood* excluded coverage for advertising injury. As noted by the court, the *Arrowood* exclusion provided that

> [t]his insurance does not apply to . . . 'Advertising injury' arising out of . . . [a]n offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

*Id*. at 867. Interpreting the policies under Colorado law, the court held that DISH falls within the commonly-understood definitions of the terms broadcasting and telecasting. *Id*. at 867, 872. As a result, the appellate court held that the exclusion above barred coverage for advertising injury under the policies.

The exclusion in the ACE policies differs somewhat from the *Arrowhead* exclusion. Both the *Arrowood* and ACE exclusions exclude coverage for an insured whose business is "(a)dvertising, broadcasting, publishing or telecasting." The key difference in the ACE policies is the added language shown as phrases (2) and (3) of the ACE exclusion. That language adds to the exclusion any insured whose business is "(2) Designing or determining content of websites for others; or (3) An Internet search, access, content or service provider." *2008 - 2009 Policy* [#12-10], CM/ECF p. 17, Section I, Coverage B, ¶ 1(j).

ACE contends *Arrowood* is binding, dispositive authority. *Arrowood* held that DISH falls within the terms broadcasting and telecasting, as used in the exclusion. DISH contends that the added language in the ACE exclusion changes the meaning of the exclusion. Considering all of the language of the exclusion together, DISH contends, the exclusion should be read to address only businesses that produce content. The use of the word "content" in phrases (2) and (3) of the exclusion, DISH contends, changes the

16

meaning of phrase (1) and the meaning of the entire exclusion.[8]

I conclude that on this issue the holding in *Arrowood* is dispositive. The ACE exclusion excludes coverage for businesses in three categories. The first category describes one class of excluded businesses using the same language at issue in *Arrowood*. The addition of the phrases numbered (2) and (3) in the ACE policy does not change the meaning of the phrase (1) in the ACE policy. The added language broadens, not contracts, the exclusion to cover additional types of businesses. Relevantly, the added language does not narrow or qualify the meaning of the phrase (1) in the ACE policy.

The *Arrowood* court held that DISH is covered by the precise language used in the first category of the exclusion at issue here. DISH has not cited any distinction between the *Arrowood* holding and this case that would alter the application of the ACE exclusion. This court is bound by the holding in *Arrowood* that "the commonly-understood definitions of the terms 'broadcasting' and 'telecasting' undoubtedly encompass Dish's transmissions." *Id*. at 872. Thus, the broadcasting and telecasting exclusion in Coverage B excludes DISH from coverage under Coverage B. Accordingly, the underlying suit does not include any claims that fall within the ambit of Coverage B under the ACE policies.

## VI. DUTY TO INDEMNIFY

In its motion, ACE seeks also a declaratory judgment that it has no duty to indemnify DISH in the underlying suit. It follows that if an insurer has no duty to defend an insured, it also has no duty to indemnify the insured. ***Cyprus Amax Minerals Co. v.***

---

[8] DISH cites the rule of *ejusdem generis* in support of this argument. That rule "suggests that when interpreting a general word that follows a series of specific words, those specific words restrict the meaning of the general." **Liberty Mut. Ins. Co. v. East Cent. Oklahoma Elec. Co-op.**, 97 F.3d 383, 390 (10th Cir. 1996). In the exclusion in question, the general words broadcasting and telecasting precede the arguably more specific language about content providers. Thus, this rule is not apposite.

*Lexington Ins. Co.*, 74 P.3d 294, 300 (Colo. 2003). I have concluded that neither Coverage A nor Coverage B of the ACE policies is applicable to the claims against DISH in the underlying suit. As a result, I conclude that ACE has no duty to defend DISH in the underlying suit and no related duty to indemnify DISH in the underlying suit.

## VII. CONCLUSION & ORDERS

The underlying suit does not include any claims that might fall within the ambit of Coverage A or Coverage B of the ACE policies. Viewing the undisputed facts in the record in the light most favorable to DISH, I conclude as a matter of law that the ACE policies do not provide coverage for any of the claims asserted in the underlying suit. As a result, ACE is entitled to a declaratory judgment declaring that it has no obligation to defend or to pay defense costs in the underlying suit and relatedly, no obligation to indemnify DISH for any liability DISH may have in the underlying suit.

**THEREFORE, IT IS ORDERED** as follows:

1. That under Fed. R. Civ. P. 56, **ACE American Insurance Company's Motion for Summary Judgment and Supporting Memorandum** [#97] filed June 15, 2015, is granted;

2. That under Fed. R. Civ. P. 56, the **Motion of DISH Network L.L.C. for Partial Summary Judgment and Supporting Memorandum of Law** [#102] filed June 15, 2015, is denied;

3. That under 28 U.S.C. § 2201 and § 2202, the Declaratory Judgment Act, judgment shall enter declaring

> (A) that the plaintiff, ACE American Insurance Company, has no obligation to defend or to pay defense costs on behalf of the defendant, DISH Network LLC, based on the claims asserted against DISH Network LLC in the **Third Amended Complaint and Demand for Jury Trial** filed February 27, 2015,

in ***U.S., et al. V. DISH Network LLC***, Case No. 3:09-cv-03073 (C.D. Illinois); and

(B) that the plaintiff, ACE American Insurance Company, has no obligation to indemnify the defendant, DISH Network LLC, based on the claims asserted against DISH Network LLC in the **Third Amended Complaint and Demand for Jury Trial** filed February 27, 2015, in ***U.S., et al. V. DISH Network LLC***, Case No. 3:09-cv-03073 (C.D. Illinois);

4.  That the plaintiff is awarded its costs to be taxed by the clerk of the court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

5.  That this case is closed.

Dated March 28, 2016, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge